UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
GRAZYNA SKLODOWSKA GREZAK,

                                        **MEMORANDUM AND ORDER**

                   Plaintiff,

                                        12 CV 4520 (RJD) (CLP)

              - against -

EVELINA GREZAK and
NANCY RUBENSTEIN,

                   Defendants.
-------------------------------------------------------------- x

DEARIE, District Judge.

      Plaintiff Grazyna Grezak brings claims against her daughter, Evelina Grezak, and her daughter's treating psychiatrist, Dr. Nancy Rubenstein. Evelina moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) and Rule 12(b)(1), arguing that Grazyna's claims are time-barred, that Grazyna fails to state a claim, and that the amount in controversy in the action does not exceed $75,000. (E. Mot. Dismiss, ECF No. 32); (E. Mem. Supp. 8-13, ECF No. 32-1); See 28 U.S.C. § 1332. Evelina also seeks Rule 11 sanctions and an injunction barring Grazyna from bringing additional claims without leave of court. (E. Mem. Supp. 13-23). In response, Grazyna has moved to amend the complaint to add claims that would more clearly establish the jurisdictional minimum. (Mot. Amend Compl., ECF No. 38). Rubenstein moves to dismiss under Rule 12(b)(6) or, alternatively, Rule 12(c), arguing in part that Grazyna's complaint is time-barred and in part that Grazyna fails to state a claim that survives the strict application of New York's common law privilege against lawsuits premised on statements made in judicial proceedings. (R. Mot. Dismiss, ECF No. 30); (R. Mem. Supp. 4-9, ECF No. 30). Lastly, Grazyna's attorney has moved to be relieved as counsel of record. (Mot. Withdraw, ECF No. 39). For the reasons that follow, the Court grants Grazyna's motion to amend the complaint and

denies Evelina's Rule 12(b)(6) and Rule 12(b)(1) motions. The Court grants Rubenstein's motions to dismiss, with prejudice. The Court denies the motion for sanctions and denies counsel's motion to withdraw, without prejudice to renew that application no later than November 21, 2014.

## BACKGROUND

We will be blunt: this is a sad family dispute that should never have developed into a federal case, following a tortuous procedural path that has already produced two amended complaints with a pending request for a third. In brief, Grazyna accuses Dr. Rubenstein – Evelina's treating psychiatrist – of overprescribing medication for Evelina and failing to monitor Evelina's course of treatment, thus contributing to Evelina's deteriorating mental health and drug dependency. While in this state, according to Grazyna, Evelina opened credit cards in Grazyna's name and made charges on those cards. Grazyna paid the resulting bills and allegedly suffered a reduction in her credit score. In the Second Amended Complaint (currently the operative complaint) Grazyna further alleges that Evelina removed $10,000 in currency from Grazyna's home. (ECF No. 21). Grazyna presses claims against Evelina for common law fraud and conversion.

Concerned with her daughter's mental state, Grazyna eventually brought two prior proceedings in New York state court, specifically the Family Court of the State of New York, County of New York (the "Family Court"). The first action sought to subject Evelina to a mental evaluation pursuant to Section 9.43 of the state Mental Hygiene Law. The second action sought to appoint a guardian for Evelina pursuant to Article 81 of the Mental Hygiene Law. Grazyna lost both actions, a result she attributes to the collision of the "clear and convincing" standard of

proof with her own inability to proffer persuasive testimony.[1] She explains that she could not offer such testimony because of her own deleterious mental state and her development of post-traumatic stress disorder following an altercation with Evelina. Moreover, according to Grazyna, Rubenstein wrote a letter to the Family Court in October 2011 stating "in sum and substance" that Grazyna was "very crazy." Grazyna alleges that this constituted a statement of fact, made with malice aforethought.

Grazyna also confronted Rubenstein, who called her "crazy" in the presence of other individuals and forcibly removed Grazyna from her medical office. Hazily, Grazyna alleged that Rubenstein made these statements "beginning on or about September 2011." After answering the original complaint, Rubenstein – noting that April 26, 2011 was the last time Grazyna was present in her office – sought limited discovery on the date of this alleged confrontation and the date of any alleged defamatory statements. Magistrate Judge Pollak granted that application. (Conference Mins., ECF No. 22). Rubenstein sought the information from Grazyna by letter, who responded by providing a copy of the letter Rubenstein had mailed to the Family Court and nothing more. (Lee Decl. Exs. F, G).

The operative complaint has gone through an awkward evolution. Grazyna's original complaint brought claims against Evelina similar to those alleged in the most recent iteration: fraud and conversion. (ECF No. 1). However, Grazyna then amended that complaint to remove

---

[1] Evelina has submitted extensive extrinsic materials relating to these proceedings in the Family Court. (Finkelstein Decl. Exs. 4-12). Evelina submits these materials not to support her Rule 12(b)(6) motion, but to support her request for an injunction forbidding Grazyna from filing additional lawsuits without leave of this Court. These materials include factual findings entered by Judge Laura Visitacion-Lewis, who found that Evelina is not incapacitated, determined that Grazyna's allegations were "outlandish" and without "basis in reality," and warned Grazyna to desist from her "campaign of harassment." (Finkelstein Decl. Ex. 6, at 71-73). Because Evelina does not argue that these findings have preclusive effect on her motions to dismiss and because we have denied her motion for sanctions, we have not considered these materials.

3

all claims against Evelina. (ECF No. 6). Evelina argues that the claims are therefore abandoned. Grazyna's attorney has instead explained that he had no intent to abandon the claims, believing incorrectly that he had reached a settlement in principle with Evelina and concluding that he could continue to name Evelina as defendant on the theory that Evelina was an involuntary plaintiff against Rubenstein. (Marzec Decl. 3, ECF No. 34-4); (Finkelstein Decl. Ex. 13). That theory – applied most commonly to patent and copyright licensees who refuse to join a suit brought by the patent or copyright owner – appeared wholly inapplicable in this action. See generally 7 Wright & Miller, Federal Practice and Procedure § 1606 (3d ed. 2001); Cilco, Inc. v. Copeland Intralenses, Inc., 614 F. Supp. 431, 433-34 (S.D.N.Y. 1985). Accordingly, we granted Evelina's motion to dismiss the First Amended Complaint, but also granted Grazyna leave to amend so that Grazyna could reincorporate the claims against Evelina. We reserved decision on whether Grazyna has abandoned the claims. However, at the last moment, Grazyna sought leave to amend for a third time, seeking to add another claim for conversion against Evelina based on the theft of gold jewelry and family heirlooms valued at more than $100,000. (Proposed Am. Compl., ECF No. 38-2).

## DISCUSSION

The Court begins by unraveling the procedural connections between Evelina's Rule 12(b)(1) motion, Rubenstein's Rule 12(b)(6) motion, and Grazyna's motion to amend.

"It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction." Blockbuster, Inc. v. Galeno, 472 F.3d 53, 57 (2d Cir. 2006). Here, the operative complaint includes a $100,000 ad damnum clause against Rubenstein. And when a complaint includes an ad damnum clause, it raises a "rebuttable presumption" that the value of the ad damnum clause is the amount in controversy. See Scherer v. Equitable Life Assurance

Soc'y, 347 F.3d 394, 397 (2d Cir. 2003). The clause thus significantly shifts the burden of demonstrating jurisdiction, requiring the party contesting jurisdiction to show "to a legal certainty" that the plaintiff's recovery cannot meet the jurisdictional threshold. Tongkook America, Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994). The moving party may resort to extrinsic evidence when attempting to make that showing. See, e.g., Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008). But it is a "high bar" to clear. Scherer, 347 F.3d at 397.

In making a Rule 12(b)(6) motion, but no Rule 12(b)(1) motion, Rubenstein has made no attempt to clear that bar. That is a sensible choice, given that the nature of Grazyna's claims against Rubenstein makes it hard to quantify the amount in controversy to a legal certainty. See James v. DeGrandis, 138 F. Supp. 2d 402, 422 (W.D.N.Y. 2001) (doubts about the value of unliquidated tort damages should be resolved in favor of jurisdiction); Marczeski v. Law, 122 F. Supp. 2d 315, 321 (D. Conn. 2000) (amount of compensatory damages for alleged libel, slander and false statements are difficult to quantify). But it leaves Evelina in a bit of a quandary, because we plainly have original jurisdiction over the claims against Rubenstein.[2] Ordinarily, that is enough to establish original jurisdiction over the entire "civil action" unless the defendants are severally liable. See Wolde-Meskel v. Vocational Instruction Project Community Services, Inc., 166 F.3d 59, 62 (2d Cir. 1999); Chase Manhattan Bank, N.A. v. Aldridge, 906 F. Supp. 870, 874 (S.D.N.Y. 1995). Moreover, even if the Court granted Rubenstein's motion to dismiss, we would not lose <u>original</u> jurisdiction over the claims against Evelina (assuming we have it),

---

[2] No party contends that complete diversity of citizenship does not exist. See E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., 160 F.3d 925, 930 (2d Cir. 1998) ("It is axiomatic that, for diversity jurisdiction to be available, all of the adverse parties in a suit must be completely diverse with regard to citizenship.") More importantly, the Court sees no factual basis to question the complete diversity of the parties: Grazyna is a citizen of Pennsylvania, and defendants are both citizens of New York.

5

because the amount in controversy is measured from the time of the complaint and "[e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." Wolde-Meskel, 166 F.3d at 63 (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289-90 (1938)).

On the other hand, the presumed $100,000 value of Grazyna's claims against Rubenstein would <u>not</u> establish original jurisdiction over the entire action if Rubenstein and Evelina are severally liable, not jointly liable. See E.R. Squibb & Sons, Inc., 160 F.3d at 933 ("[E]ach and every severally liable defendant must, in the normal course of things, meet the amount in controversy."). Yet, even in that instance, the claims against Rubenstein would still create a jurisdictional "anchor" with which the Court could exercise <u>supplemental</u> jurisdiction, so long as the claims against both Rubenstein and Evelina derive from a common nucleus of operative fact. See Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 178-79 (2d Cir. 2007) (citing Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 558-59 (2005)). But in that scenario, if the Court were to then grant Rubenstein's motion to dismiss, we could (and probably would) exercise our discretion to dismiss the claims against Evelina without prejudice. 28 U.S.C. § 1367(c)(3); See Williams v. Genie Indus., Inc., 2013 WL 4459856, at *1 (N.D.N.Y. 2013).

In short, if Grazyna's claims against Rubenstein establish original jurisdiction (i.e., if Evelina and Rubenstein would be jointly liable), then Evelina's motion fails regardless of whether we dismiss the Rubesnstein claims. Likewise, if Grazyna's claims against Evelina put more than $75,000 in controversy, then Evelina's motion fails. But if Grazyna's claims against Rubenstein merely supply a means of exercising supplemental jurisdiction (i.e., if Evelina and

6

Rubenstein would be severally liable), then that jurisdiction is committed to the Court's discretion.

The parties have not squarely engaged the question of joint versus several liability or supplemental jurisdiction, instead focusing their briefing on whether Grazyna's claims against Evelina independently put more than $75,000 in controversy. Grazyna's last-minute gambit seeks to answer that question conclusively by adding new conversion claims to the complaint that would increase the amount in controversy between Grazyna and Evelina, thus girding the lawsuit against Evelina's jurisdictional attack. In our view, the best way to untie the knot is to first address the motion to amend. If the proposed amendment alleges claims against Evelina in excess of $75,000 and if we accept that complaint for filing, then the question of whether the claims against Rubenstein establish original or supplemental jurisdiction falls by the wayside.

The Court concludes that the proposed amended complaint does put more than $75,000 in controversy between the Grezaks and (with some reluctance) grants the motion to amend. Unlike the operative complaint, the proposed amended complaint states in no uncertain terms that the value of the currency, credit and personal property converted by Evelina exceeds $100,000. Indeed, according to the complaint, the value of the stolen heirlooms alone approximates $100,000. Again, such allegations raise a presumption that, although rebuttable, is extremely resilient. Scherer, 347 F.3d at 397.

The more salient question is whether Grazyna's constant vacillation might constitute grounds to reject the proposed amendment – more precisely, whether Grazyna already abandoned her conversion claims, offers the amendment in bad faith, or (similarly) is no longer entitled to the good faith presumption that the amount in controversy exceeds $75,000. See Allen v. N.Y.C. Housing Auth., 2012 WL 4794590, at *4-5 (S.D.N.Y. Sep. 11, 2012)

(abandonment of claims); Burns v. King, 160 F. App'x 108, 111-12 (2d Cir. 2005) (after successfully opposing motion to dismiss for lack of jurisdiction by relying on emotional damage claims, plaintiff's subsequent withdrawal of those claims negated presumption of good faith in alleging amount in controversy); Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir. 1995) ("Absent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility, the motion [to amend] should be freely granted."). Regardless of how one couches the issue – abandonment, undue delay or prejudice, bad faith, etc. – it devolves to whether or not we can reject Grazyna's justifications for omitting the allegation of stolen gold and heirlooms from her original complaint, then removing all of her claims against Evelina from the First Amended Complaint, then adding the claims back into the Second Amended Complaint, and finally incorporating the new conversion allegations into the most recent proposed amended complaint.

Grazyna, as we have said, avers that she had no intent to abandon any claims and that she only withdrew the claims against Evelina from the original complaint once the parties had reached what Evelina led her to believe was an imminent settlement. The attorneys have fiercely contested that point, but the Court simply cannot resolve this dispute on the papers alone and has no desire to take the lawyers' testimony. Besides, unlike in Allen, 2012 WL 4794590, at *4, Grazyna never confirmed unequivocally in writing to the Court itself that she intended to abandon the claims. Counsel's unwilling plaintiff theory may have been unusual, but it was not clear abandonment of the claims.

In addition, Grazyna states that her physical and psychological problems so impaired her ability to consult with her attorney that she could not allege the most recently added conversion claims in her original complaint. That assertion dovetails with her repeated allegations (in every

iteration of the complaint) that she suffers from post-traumatic stress disorder and other illnesses. It also comports with a letter submitted to the Court by her psychiatrist.[3] To reject this explanation we would be required to engage in fact-finding well beyond what we think appropriate at this stage. Thus the Court is in no position to determine conclusively that Grazyna offers the amendment in bad faith or with undue delay, rather than as a consequence of her infirmities.

We cannot help but fear that we have countenanced an ambush. But we reluctantly grant Grazyna's motion to amend. Consequently the allegation the Evelina stole well over $75,000 in property controls, and the Court denies Evelina's motion to dismiss for lack of jurisdiction.

The Court next turns to Evelina's Rule 12(b)(6) motion to dismiss, first addressing the argument that the complaint fails to allege a plausible claim for conversion on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). That argument, already shaky under the second amended complaint (which alleged theft of currency), must fail under the newly adopted operative complaint, in which Grazyna quite pointedly alleges that Evelina stole personal property from her home. Whatever gloss Iqbal and Twombly may have brushed across the pleading standard for common law conversion, it is surely not so opaque that these stark accusations fail to state a claim. See Colavito v. New York Organ Donor Network, Inc., 8 N.Y.3d 43, 49-50 (2006) ("A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession.")

With greater force, Evelina argues that the statute of limitations bars Grazyna's cause of action for fraud. Ordinarily, the district courts do not consider the applicability of a limitations

---

[3] The Court considers such materials only to assess whether the amendment is offered in bad faith, not to test the pleadings.

9

period in a Rule 12(b)(6) motion, but we will do so if the expiration of the limitations period is apparent on the fact of the complaint. See, e.g., Estate of Axelrod v. Flannery, 476 F. Supp. 2d 188, 203 (D. Conn. 2007) (citing Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989)). The Court may also consider materials incorporated by reference into the complaint or integral to the complaint. Johnson v. Levy, 812 F. Supp. 2d 167, 175-76 (E.D.N.Y. 2011). But, when identifying material supposedly integral to the complaint, we must tread carefully to avoid improperly relying on materials outside the pleadings. Axelrod, 476 F. Supp. 2d at 199-200.

The Court applies the law of New York to determine the relevant limitations period. Generally, a plaintiff may pursue a claim for common law fraud within six years of sustaining injury, and so Grazyna invokes that limitations period. See C.P.L.R. § 213; Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 94 (1993) ("[A]ccrual occurs when the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint."). However, New York's so-called "borrowing" statute, C.P.L.R. § 202, specifies that, when an out-of-state resident brings a claim in New York, the court must apply the shorter of either New York's limitations period or the limitations period in the state where the cause of action accrued. Stuart v. American Cyanamid Co., 158 F.3d 622, 627 (2d Cir. 1998). And because Grazyna seeks recovery for economic injury, the cause of action accrued in her state of residence, Pennsylvania. See Global Financial Corp. v. Triarc Corp., 93 N.Y.2d 525, 529-30 (1999); Hunt v. Enzo Biochem, Inc., 471 F. Supp. 2d 390, 399 (S.D.N.Y. 2006). We must therefore ask whether Pennsylvania law imposes a shorter limitations period than New York's six year limitations period for common law fraud. It does: two years. 42 Pa. C.S.A. § 5524; Drelles v. Manufacturers Life Ins. Co., 881 A.2d 822, 831 (Pa. Super. Ct. 2005).

Nevertheless, the motion founders because Pennsylvania also incorporates a discovery rule, tolling a cause of action for fraud until plaintiff discovers the injury. See Id.; Hunt, 471 F. Supp. 2d at 399 ("In borrowing a foreign statute of limitations, a court must apply all extensions and tolls that are applicable in that state"). Functionally, New York does the same, not so much tolling the limitations period as carving out an alternative rule of accrual: that an "action based on fraud" may be brought "two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." C.P.L.R. § 213(8). Moreover, G.B.L. § 380-n, which sets forth the limitations period for identity theft, see G.B.L. § 380-l, also employs a discovery rule: "the action may be brought at any time within two years after the discovery by the individual of the misrepresentation." Cf. Kudelko v. Dalessio, 829 N.Y.S.2d 839, 841 (N.Y. Civ. Ct. 2006) (concluding that G.B.L. § 380-l creates a statutory cause of action for identity theft in addition to common law fraud and that the limitations period runs two year after discovery of the identity theft). Ultimately, then, Evelina is correct that Grazyna cannot rely on the six-year limitations period for common law fraud in New York, because Pennsylvania law provides a shorter limitations period. But both New York and Pennsylvania apply an identical limitations period – two years after discovery of the injury – to claims of fraud or identity theft that initially go undiscovered.

The Court has considered certain materials that are in our view integral to the complaint: specifically, monthly credit card statements showing the existence and dates of the credit card charges that form the gravamen of the complaint, charges that Evelina allegedly made after she opened the accounts in Grazyna's name.[4] The statements were issued in April and May 2008.

---

[4] Grazyna, not Evelina, has submitted the materials, operating under the mistaken impression that a six-year limitations period governs her claim for common law fraud and thus seeking to show that the fraudulent charges occurred approximately four years before she filed the complaint.

Thus Grazyna's injury apparently occurred and her claims accrued approximately four-and-a-half years before Grazyna filed the lawsuit. But the Court cannot determine whether Grazyna ever received these statements, and nothing on the face of the complaint permits us to infer that Grazyna discovered or should have discovered these injuries more than two years before filing the complaint.[5] Accordingly, even though Evelina has persuaded us that the six-year New York limitations period for common law fraud does not apply, that point does not carry the day because New York's two-year period applying to late discovered fraud (or Pennsylvania's tolling rule, effectively setting forth an identical limitations period) may preserve the otherwise untimely claims. We therefore deny the motion to dismiss on limitations grounds without prejudice to renewal at a more appropriate time.

We now turn to Rubenstein's motion, taking all well-pleaded allegations of the complaint as true and drawing all reasonable inferences in Grazyna's favor. We grant the motion because part of the lawsuit arises out of an encounter between Grazyna and Rubenstein that took place outside the statutory limitations period, while the remaining claims are barred by New York's common law privilege protecting statements made in connection with a court proceeding.

New York's statute of limitations for libel or slander is one year, CPLR § 215, as is the statute of limitations for intentional infliction of emotional distress. See Dinerman v. City of

---

[5] We note that, in addition to providing copies of the credit card statements, Grazyna has also stated that Evelina confessed to furtively opening several credit cards in May 2008. In a footnote, Evelina raises the possibility that this constitutes an admission that Grazyna knew of these claims in May 2008, which would render certain claims untimely. (Evelina Reply Mem. 4 n. 4). Evelina may be right. But we do not think that these purported admissions (as opposed to the account statements) can be considered integral to the complaint. And besides, Grazyna also references a loan account that she did not discover until May 2012, a date well within the limitations period. The Court will therefore adopt a course similar to that set forth in Kregler v. City of New York, 770 F. Supp. 2d 602, 607 (S.D.N.Y. 2011), placing Grazyna's statements to the side in the context of this motion to dismiss but leaving open the possibility that Grazyna has made judicial admissions that we may consider in a subsequent motion for summary judgment.

N.Y. Admin. for Children's Servs., 857 N.Y.S.2d 221, 222 (App. Div. 2008). Although a claim for "prima facie tort" has a longer limitations period, that cause of action cannot be used as a substitute for what is essentially an action seeking damages for defamation of character. Ramsay v. Mary Imogene Bassett Hosp., 113 A.D.2d 149, 151 (N.Y. App. Div. 1985). Thus the Court applies a one-year limitations period for the claims of defamation and intentional infliction of emotional distress.

Based on the limited discovery exchanged among the parties, Rubenstein asserts that many of Grazyna's claims arise from an incident that occurred in Rubenstein's office in April 2011. Because the Court permitted discovery on that precise issue, because Grazyna had the opportunity to but did not dispute this point, and because Grazyna also submitted extensive extrinsic materials in opposition to other aspects of the defendants' motions, we conclude that Grazyna had adequate notice of the possibility that the Court might convert the motion to a motion for partial summary judgment and sufficient opportunity to submit her own materials in opposition. Compare, e.g., Sahu v. Union Carbide Corp., 548 F.3d 59, 67 (2d Cir. 2008) (concluding that conversion of motion was premature because plaintiff did not have reasonable opportunity to present materials in opposition) with In re G. & A. Books, Inc., 770 F.2d 288, 294 (2d Cir. 1985) (concluding that conversion of motion was proper because both parties "had ample opportunity to present relevant material outside the record . . . and did so.") We therefore exercise our discretion to convert the motion. And, in contrast to her position on the motion to amend, Grazyna has never identified some other specific incident occurring after April 2011 that her condition caused her to forget until now (other than statements made in connection with the Family Court proceedings, to which we turn next). Rather, she simply claims more generally

13

that at some point she may recall such an incident. (Grazyna Aff. 3-4, ECF No. 35-1); (Marzec Aff. 2, ECF No. 35-2). That does not suffice. The claims are dismissed with prejudice.

In contrast, Grazyna's libel claims (and, broadly read, certain defamation and intentional infliction of emotional distress claims) fall within the limitations period, arising as they do from Rubenstein's alleged submission of a letter to the Family Court in connection with the Section 9.43 and Article 81 proceedings in October 2011. However, Rubenstein correctly maintains that New York law creates an absolute privilege barring suits based on statements made in connection with a court proceeding. This privilege applies widely, protecting any oral or written statement as "'absolutely privileged, notwithstanding the motive with which they are made, so long as they are material and pertinent' to the litigation." Solomon v. Larivey, 853 N.Y.S.2d 770, 771 (App. Div. 2008) (quoting Sinrod v. Stone, 20 A.D.3d 560, 561 (N.Y. App. Div. 2005)). "The privilege attaches to every step of the judicial proceeding, not just the hearing or trial phase. Furthermore, the privilege attaches to witnesses as well as judges, parties, and attorneys." D'Annunzio v. Ayken, Inc., 876 F.Supp.2d 211, 217 (E.D.N.Y. 2012).

Once attached, the protection afforded by this privilege appears to be virtually impenetrable. See Sinrod, 20 A.D.3d at 561-62. Indeed, we confess some mild surprise at the depth of the privilege, which apparently protects even a demonstrably false statement regarding mental health made with the express purpose to destroy another's reputation, so long as it is made in a judicial proceeding. Id. For example, in Sinrod, the plaintiff alleged that the defendant had "willfully, maliciously, and falsely" charged that the plaintiff was mentally unfit to practice law in an attorney grievance proceeding. Yet the trial court dismissed the case, and the Appellate Division affirmed:

> The plaintiff commenced this action alleging, inter alia, defamation, claiming that in these Grievance Committee and court proceedings, the defendant wilfully,

14

maliciously, and falsely charged that the plaintiff was mentally, physically, and emotionally unfit to practice law and that he had engaged in unprofessional and criminal conduct, all for the purpose of destroying his good name and reputation as an act of extortion and revenge . . . Statements made by parties, attorneys, and witnesses in the course of a judicial or quasi-judicial proceeding are absolutely privileged, notwithstanding the motive with which they are made, so long as they are material and pertinent to the issue to be resolved in the proceeding. The Supreme Court correctly concluded that the claims challenging the complaints of misconduct filed with the Grievance Committee by the defendant were absolutely privileged. Similarly, those allegedly defamatory statements contained in documents submitted in judicial proceedings fell within the ambit of the privilege as they were material and relevant to the proceedings.

Id. at 561-62 (citations omitted).

Again, the scope of this privilege is mildly surprising. But this Court can also see why, as a matter of public policy, the courts of New York would apply this sort of prophylactic rule in order to quash even the slightest possibility that full and truthful witness testimony might be chilled by the threat of future lawsuits. See Sexter & Warmflash, P.C. v. Margrabe, 38 A.D.3d 163, 171-72 (N.Y. App. Div. 2007) ("As a matter of public policy, the possible harm to individuals barred from recovering for defamatory statements made in connection with judicial proceedings is deemed to be 'far outweighed by the need ... to encourage parties to litigation, as well as counsel and witnesses, to speak freely in the course of judicial proceedings.'" (quoting Martirano v. Frost, 25 N.Y.2d 505, 508 (1969))).

The Court does not convert this aspect of Rubenstein's motion to a motion for summary judgment, because Rubenstein's letter to the Family Court is integral to the complaint. The Court summarizes its contents only generally, because the parties have consistently requested under seal treatment of the letter and related Family Court materials. The letter is addressed directly to the Family Court in support of a motion pending in that court, identifies Rubenstein as Evelina's treating psychiatrist, states a diagnosis, makes statements regarding the psychological impact of Evelina's disputes with Grazyna upon Evelina, and recommends that the court grant

15

relief to Evelina. (Lee Decl. Ex. E). In short, the letter constitutes a witness statement that is both material and pertinent to the Family Court proceedings. Accordingly, the letter is absolutely privileged. The Court grants Rubenstein's motion to dismiss all claims predicated on this letter with prejudice.

Having thus granted summary judgment on the claims arising out of the April 2011 altercation between Rubenstein and Grazyna pursuant to the applicable limitations period and having dismissed the remaining claims pursuant to New York's absolute privilege for statements made in connection with a court proceeding, we dismiss the action against Rubenstein in its entirety, with prejudice.

In light of the fact that we have not dismissed the claims against Evelina, we can hardly issue sanctions against Grazyna at this time, nor can we enjoin her from bringing future proceedings. See generally Safir v. United States Lines Inc., 792 F.2d 19, 24 (2d Cir. 1986) (explaining five-factor test for enjoining vexatious litigation).

Finally, we deny the application of Grazyna's counsel to withdraw from the action, without prejudice to renewal no later than November 21, 2014. We are not unsympathetic to counsel's position. But we must require one further task of him: confer with his client, confer with counsel for Evelina, and again consider the wisdom of pressing the surviving claims. As the Court has said, this is a sad situation, one that we do not believe suitable for resolution in a federal lawsuit, even though we must fulfill our obligation to resolve all controversies over which we have jurisdiction.

If counsel encounters the same difficulties as before, we will hear a renewed motion to withdraw. In any event, both parties are to file a status report with the court no later than November 7, 2014, advising the Court as to the status of the remaining claims.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2014

/s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge